IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIJON SUMMERS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-3918 |
| | : | |
| EXTRITY, LLC, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                    **January 30, 2023**

Plaintiff Dijon Summers brings this case against Extrity, LLC, David Coleman, and John Doe Defendants 1-10, in conjunction with his former employment with Defendants. He asserts several claims under Title VII of the Civil Rights Act of 1964, as well as state law claims for negligent hiring and supervision, intentional infliction of emotional distress, and civil conspiracy. Defendants move to dismiss Count VI (intentional infliction of emotional distress) and Count VII (civil conspiracy) of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Summers fails to allege facts which plausibly demonstrate Defendants caused his emotional distress, an essential element of Count VI, and because there can be no civil conspiracy without a valid underlying tort claim, Defendants' partial Motion to Dismiss will be granted without prejudice.

## FACTS

In February 2022, Summers began working for Defendants as a security guard, staffing subway stations throughout the City of Philadelphia. Am. Compl. ¶¶ 24, 27, ECF No. 5. Soon after Summers started work, his supervisor William Bates began "outing" him as transgender to coworkers. *Id.* ¶¶ 28-29. Several of these employees routinely voiced their contempt towards Summers and his gender identity. *See id.* ¶ 68. One coworker, Lamere Nathaniel, called Summers a "tranny" and threatened to kill him on multiple occasions. *Id.* ¶¶ 30-33. Though Defendants were

warned of Nathaniel's threats against Summers, they took no action. *Id.* ¶¶ 43-47. On May 10, 2022, Nathaniel assaulted Summers while at work, beating him while calling him a "girl" and a "bitch." *Id.* ¶¶ 56-59. Immediately after this altercation, Summers texted Defendant David Coleman[1] to tell him about the incident and advise that he was "pressing charges so the company will be investigated." *Id.* ¶¶ 61-62.

Bates continued outing Summers to more colleagues. *Id.* ¶ 67. Soon after Nathaniel's assault, another employee named Dymere Campbell learned about Summers' gender identity and began harassing him. *Id.* ¶¶ 67-68. On June 23, 2022, Campbell verbally assaulted Summers, calling him a "tranny boy," and attempted to physically harm him. *Id.* ¶¶ 69, 72, 77-79. Summers then confronted Bates, asserting that his actions in disclosing Summers' gender identity were endangering Summers. *Id.* ¶¶ 80-81. The following day, Bates terminated Summers' employment because of the altercation with Campbell. *Id.* ¶¶ 82-85. Campbell, however, was not terminated. *Id.* ¶ 86. Summers texted Coleman later that day, stating "we need to discuss yesterday['s] situation before a lawsuit comes for transgender discrimination." *Id.* ¶ 87. Coleman advised Summers to contact Extrity's Human Resources department. *Id.* ¶ 88.

Shortly after his termination, Summers received three anonymous text messages. *Id.* ¶ 89. One message said: "We on our way to ya house bitch . . . Gonna do you just like lamere [Nathaniel] did." *Id.* ¶ 90. Another called him a "faggot" and indicated he would soon be in a coffin. *Id.* ¶ 91. The final message said: "Yo this Dymere [Campbell] when you so call sue the company keep my name out that shit you rat ass nigga." *Id.* ¶ 92. Summers alleges these messages were sent by Defendants' agents or employees, either at their direction or with their knowledge and consent,

---

[1] Despite alleging Defendant Coleman "operate[s] through his Pennsylvania fictitious name, 'Extrity Services,'" the Amended Complaint does not specify what role Coleman holds with the company. *See* Am. Compl. ¶ 94, ECF No. 5.

and were intended to dissuade him from bringing this lawsuit. *Id.* ¶¶ 89, 93.

Summers filed a "Charge of Discrimination" with the United States Equal Employment Opportunity Commission ("EEOC") for gender discrimination in violation of Title VII and the Pennsylvania Human Relations Act. *Id.* ¶ 21. He received a "Right to Sue" letter on August 17, 2022, and brought this action on October 3, 2022. *Id.* ¶ 22. Defendants now move to dismiss Counts VI and VII of the Amended Complaint for failure to state a claim upon which relief may be granted.

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). This Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

**DISCUSSION**

Taking all facts in the Amended Complaint as true and drawing all inferences in his favor, the Court finds Summers fails to plead a plausible claim of intentional infliction of emotional distress. And because the civil conspiracy claim "hinges on the validity" of the intentional

infliction of emotional distress claim, Summers also fails to adequately plead the existence of a civil conspiracy. *See McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. Ct. 2000). Defendants' partial Motion to Dismiss will be granted, and Counts VI and VII will be dismissed with leave to amend.

Summers claims Defendants are liable for intentional infliction of emotional distress based on the text messages he received after his termination. *See* Am. Compl. ¶¶ 179 *et seq*, ECF No. 5. He alleges Extrity directed its employees or agents ("John Doe Defendants 1-10") to message him, with the intent to intimidate him and dissuade him from suing the company. *Id.* ¶ 183. Under Pennsylvania law, the tort of intentional infliction of emotional distress has three elements: the defendant's conduct must be (1) extreme and outrageous, (2) intentional or reckless, and (3) cause severe emotional distress. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987) (internal citation omitted). "Conduct rises to the 'extreme and outrageous' level if it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Doe v. Moravian Coll.*, Civ. No. 20-377, 2023 WL 144436, at *10 (E.D. Pa. Jan. 10, 2023) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)).

Defendants argue the Amended Complaint fails to plead facts connecting them to the text messages, other than the conclusory statement that "Defendants directed the John Doe Defendants 1-10 to send the text message communications in order to intimidate Plaintiff and dissuade him from pursuing legal action." Defs.' Mem. Supp. Mot. Dismiss 6, ECF No. 6-1 (quoting Am. Compl. ¶ 183, ECF No. 5). While the texts are "deplorable," Defendants note they were either sent anonymously or signed by someone else.[2] *Id.*

---

[2] Campbell is not named as a Defendant in this suit.

In response, Summers contends the evidence as a whole creates a reasonable inference that Defendants "either directed or permitted the text messages to be sent," and cites three facts allegedly connecting Defendants to the messages. *See* Pl.'s Mem. Opp. Mot. Dismiss 5, ECF No. 8. First, the timing is suspicious: each text message was sent soon after Summers advised Coleman of his intention to sue. *Id.* Because the messages were also sent right after the altercation between Summers and Campbell, however, the timing could also suggest they were sent in response to that event. Second, two of the text messages referenced his coworkers by name, and one mentioned the assault by Nathaniel. *Id.* This fact also does not plausibly demonstrate Extrity's or Coleman's connection to the text messages, as anyone who knew the people involved could have had this information. Finally, Campbell's text message referred to Summers' intent to sue, which Summers allegedly only shared with Coleman. *Id.* at 9. Therefore, Summers argues, Coleman must have told Campbell about Summers' plans, and either explicitly directed him to threaten Summers not to sue or "stood idly by" despite knowing a threat would occur. *Id.*

Summers conflates possibility and plausibility. At the motion to dismiss stage, it need not be merely possible that Defendants caused Summers' emotional distress—it must be plausible. *See Ashcroft*, 556 U.S. at 678 (explaining a claim requires "more than a sheer possibility that a defendant has acted unlawfully"). The Amended Complaint fails to meet the plausibility threshold. First, it does not include sufficient facts to infer that Coleman spoke with Campbell about Summers' intent to sue: it is equally possible that Campbell assumed as much based on the rampant discrimination Summers was facing. Second, even if Coleman shared this information, Summers' theory that he did so with the intent to dissuade Summers from suing—either explicitly directing Campbell or knowing what would occur—is implausible because Campbell's text did not actually try to discourage the litigation against Defendants. Instead, Campbell told Summers to keep

Campbell's name out of it. Am. Compl. ¶ 92, ECF No. 5. Campbell's directive did not benefit Defendants. Under Summers' theory, there is no logical reason that Defendants would direct Campbell to dissuade Summers from suing *him*, rather than dissuade Summers from suing *Defendants*. So even if Coleman told Campbell about the impending lawsuit, there are no facts in the Amended Complaint to plausibly demonstrate he did so with the intent to cause (or reckless disregard of causing) emotional distress. Because Summers cannot show Defendants were involved in the awful text messages which caused his emotional distress, Count VI of the Amended Complaint will be dismissed.

In Count VII, Summers alleges Extrity, Coleman, and the John Doe Defendants conspired to intentionally inflict emotional distress. To state a claim for civil conspiracy, a plaintiff must show: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act . . . ; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *McKeeman*, 751 A.2d at 660. However, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Id.* (internal quotation marks and citation omitted). Because the Court will dismiss Summers' claim for intentional infliction of emotional distress, his claim for civil conspiracy to commit intentional infliction of emotional distress also fails.

Since Summers fails to plausibly show Defendants Extrity and Coleman caused his emotional distress, his claim for intentional infliction of emotional distress will be dismissed. And because his civil conspiracy claim is not supported by an underlying tort, Summers' conspiracy claim will also be dismissed. Defendants' Motion will be granted, and the remaining claims in the Amended Complaint will proceed to discovery. Summers has requested that the Court grant leave to amend if the Motion to Dismiss is granted. Pl.'s Mem. Opp. Mot. Dismiss 4 n.1, ECF No. 8; *see*

*also* Fed. R. Civ. P. 15(a). Because leave to amend should be freely given in the absence of "undue delay, bad faith or dilatory motive," the Court will grant the request. *Forman v. Davis*, 371 U.S. 178, 182 (1962).

      An appropriate Order follows.


BY THE COURT:


 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.